Good morning, your honors. I'm Michelle Burroughs. I represent appellants Steve Puccetti and Richard Bettini. My clients Puccetti and Bettini are here with me in the court. We have not had any court hearings, so this is their day in court. The briefing on this matter, we have assigned five errors to two judgments rendered by Judge Aiken in the district court below. Two of those arose from a dismissal based on a Rule 12b6 motion filed by defendants before any discovery was provided. The court was then tasked with the duty of reviewing the complaint as drafted at that time to make her decisions. She dismissed the unreasonable arrest claim arising from a hunting citation or two that were issued to my clients in October of 2007. The unreasonable arrest claim was dismissed basically because the court found that my clients admitted that they violated the game violations in question. And then the court also dismissed in that Rule 12b6 motion, what she termed the Brady violations, which I think are more artfully described as the right to access to evidence in criminal cases and there are a variety of forms of those. The court also then dismissed the rest of the case, including again dismissing the access to evidence claims in the motion for summary judgment that she handed down about a year later. And she dismissed the malicious prosecution claim that was then pending, the federal and the state, for the reason, she claims, that the statute in question, the RS-498 statute, indicated that while my client, Mr. Puccetti, could very well have killed the elk for humane reasons, he did not adequately report it to officials. In essence, our argument is she read into that statute language, which is not in the statute, and imposed duties on the hunters that are not clearly stated in the statute. What did we do with the fact that the animal was tagged? That, the district court seized upon that fact as conclusive evidence that the statute didn't apply because that is an act of taking possession of the game as opposed to calling the warden and letting the warden know that you've just put down a wounded animal. What I believe the court found in that case was Mr. Puccini, who was accused of sharing his tag for that elk, did not have the benefits of the humane mercy killing provision of the statute. I think she found that Mr. Puccetti did in fact have the benefits, but that he failed to report on his own to game officials. But there wouldn't, as I understand the district court's reasoning, there wouldn't be any reason to tag the animal at all if it's truly a mercy killing. Isn't that, isn't that what she was saying? I think, I think that's what she held, but I'm not sure that that's what the rules of the statute actually contemplate. The OAR, the regulations that talk about the tagging and the shooting of elk, talk about taking elk, and taking can be killing or taking possession. And had the officers at the scene decided that this was a humane taking, they could have given it to Mr. Puccini to take for his own. But they chose to seize it. But I think that statute is broad enough that you could take an elk outside of a normal hunting season for elk if you come upon a wounded animal that you believe is otherwise going to die and you want to put it out of its misery. And you certainly wouldn't put an elk tag on it if it was shot outside of the hunting season, would you? If it was an elk, I don't know. I don't know that there's anything that I have read in the regulations or the statute that would prohibit it other than the technical mandates in what a tag is to be used for. The problem I'm having with your legal argument is that, as I understand hunting laws, first of all, a hunter in Oregon is limited to taking one elk per hunter season, right? You get a single tag. In an area, yes. Yeah, in an area. And so why was the district court in error in concluding that tagging the animal once it was down, whatever the reason was for shooting it, was tantamount to, in essence, taking possession as if this was simply part of the hunt? And therefore, the mercy killing statute doesn't apply. Well, that, and again, it just may be that I'm not completely understanding where you're at. Mr. Patini is the one who tagged the elk. Okay, let me see if I can clarify my question. There wouldn't be any reason for anybody to tag an elk if it's truly a mercy killing. And in that case, there would be no reason to issue a citation to Mr. Patini either if the officers determined that it was a mercy killing and that Mr. Patini could have the elk. Let me go back and split these up. Mr. Patini said that he put his tag on an elk that Mr. Puccetti killed, correct? Well, Mr. Patini shot that elk and Mr. Puccetti then killed it as it started to run away. So, but in terms of what happened is that ultimately Mr. Puccetti kills the animal, correct? Correct. Okay. But then, so Mr. Puccetti kills the animal, but Mr. Patini puts his, Mr. Patini's tag on it. Yes. So forgetting the mercy killing statute and all that, how is that not a violation of the law? Well, I think at the time, Mr. Patini's... What was the tag on there? I think that at the time, Mr. Patini reasonably believed, based on the regulations, that he had killed this elk and it was his. Everyone else had taken their elk and had tagged their elk. It wasn't as if... Mr. Patini believed it was his when he knew that it was, he basically said on the authorities that he put his tag on the elk that Mr. Puccetti killed. Yes. So Mr. Puccetti had already killed an elk earlier in the day at some point. So he kills the elk, puts his tag on it. He has no more tags left. Right. He then, according to Mr. Patini, Mr. Puccetti killed elk number two, but Mr. Patini put his tag on it. So just now, as to Mr. Patini, based on his own statement to the officers, why isn't that a violation? I don't know that it is not a violation, Your Honor. I mean, admittedly, the tagging citation may in fact be a violation by Mr. Patini. Okay. But the humane mercy killing defense, and I think even Judge Aiken argues or notes this, probably applies to Mr. Puccetti, who did the kill shot. Right. So then Mr. Puccetti says he does the killing because he's putting the animal out of his misery. Right. And there's also a statute that forbids the wasting of animals. Correct. So it was sort of a devil's choice for him at that point, because he knew he had killed his elk at that point. And so then the question I have is, if it was a mercy killing, does the fact that somebody else put their tag on it, what does that do vis-a-vis Mr. Puccetti? And we're just kind of trying to split them up here individually. Well, I mean, part of the problem is that these are fact questions, and this was a summary judgment motion. If a judge, if a jury believed that in fact there was no mercy killing, the motive, the intent, the facts, that should have been submitted to a jury. Our error is that Judge Aiken made these decisions for the jury when there were these disputes of fact. She does it on a question of law. Oh. I mean, she basically says this statute, they can't meet this statute, even taking the evidence favorable to them. Right. And she reads the statute with terms that are not in the statute, Your Honor. Well, can you help me with the language of the statute? Yeah, that would be helpful. Because as I read ORS 498.016, it requires first an immediate report to a wildlife officer. And then the last clause says, and shall dispose of the wildlife in such manner as the State Fish and Wildlife Commission directs. And that's what happened. Well, that doesn't necessarily mean that the person who killed the elk gets to keep it. It may very well be that the game warden seizes the animal and takes it someplace else and disposes of it. And they do that. Right. And sometimes they give it to the hunters. It's a discretion of the officer in the field. The officer, not the hunter. And I guess the problem here, I keep going back to the, I don't understand if it was truly a mercy killing why the elk was tagged. Because the statute seems to contemplate that if you are going to rely on the statute, you've got to call the game warden. And then the game warden tells you what to do with the carcass. Well, respectfully, that's not what I read the statute or the rules to require. But given the facts of this case, these hunters didn't have the opportunity to do that when the officers showed up and began their investigation. And then began to create a factual situation that would deny the mercy killing benefit to these hunters. The hunters didn't have a time to get off the mountain and make a call and do as you're suggesting. But the tagging of the animal suggests that they don't meet the statute. I don't see that, Your Honor, with respect. But again, that's Mr. Bottini. And Mr. Bottini didn't have the time to get down the mountain and call game officers and say, hey, should I have tagged this elk or should you come and get it from me? Because here's what happened. And he was very truthful from the beginning with the officers about what did happen. It's another way to look at it. Maybe I'd have to go back and look at the tag law. But that is that your argument has to come down to that the tagging is not inconsistent with the mercy law as a matter of law, correct? I'm sorry, I didn't hear. The tagging is not inconsistent with invoking the mercy law. No. That's your position. I don't believe it is, Your Honor. Which makes some logical sense, I think. Now, the question is, where would we go to support that position? Well, honestly, there's no case law in Oregon on any of this. You have a couple of affidavits from the Fish and Wildlife Director and from the DA, statements by the police officers, which themselves are contradicted by their own testimony that they will frequently or have engaged in mercy killing even when off duty. Does that then beg the question that they need to call another officer and report this? Or do they get to make the decision about what to do with it? Officer Spencer testified that he has engaged in mercy killing. The statute is unclear. It hasn't been interpreted. The rules are changed regularly. And if the rules contradict the statute, the statute controls. So it may be that there is a, you know, I think the statute's clear on its face. It does not give the direction that Judge Aiken and this court is suggesting that these officers do something specific in some order. And in this case, specifically, they didn't have the time to do any of that. So with respect to the malicious prosecution dismissal, the court rests upon this very discussion that we're having about what does the statute mean and what should these. Well, if you have to immediately report, but then they show up. And they're reported. Innovating circumstance. Yeah, it's not like they drove out and went to the to the game and fish station. They basically. All the circumstances collapsed right away into one event. They could have lied, but they reported accurately and honestly what happened. And the officers took the L. But that still doesn't get us past the probable cause with regard to the use of another's tag. I mean, that is a violation and they admitted it to the state troopers. It it may be, but there are factual issues about what was going on at the scene and how that it was issued to them that I believe should be submitted to a jury. What additional facts once the district court concluded that there was probable cause to believe a violation of the hunting law had occurred? What what more facts does the court need in order to resolve the 1983 claim for unlawful arrest? Well, the the unreasonable arrest claim is somewhat different. Factual scenarios were arguing the malicious prosecution claim, which would be that they maintained this action. Well, probably the arrest claim, too. But this action was initiated by these police officers based upon the police officer's view of what happened. But when the hunters told them what really happened, our issue is then the officers started planning bullets to disprove that Mr. Bettini ever shot the elk. Mr. Bettini did shoot that elk. And in order to promote their theory that these are game violations, they wanted to eliminate the possibility that there was any mercy killing by planting only seven millimeter bullets in this elk and destroying the forensic evidence that led to that. I guess your argument, if he since he shot, he fired the first shot, if something hadn't been done, then they might have been in violation of the law as well. Right. By just letting the elk go in a wounded. Yes. If they had they believe and these are lifelong hunters and the officers even testified that allowing an animal to go off and die like that needlessly can be a violation, allowing waste of game. So did you want to say, oh, I have 28 seconds. No, thank you, Your Honors. May it please the court, Inga Wells from the Oregon Department of Justice on behalf of defendants. In this case, the two defendants were cited by the plaintiffs were cited by the defendants for two wildlife violations that they admitted at the scene that they had committed. And therefore, the district court was correct in granting the rule 12 motion on the unreasonable arrest claim on the basis that there was probable cause to issue the citations at that time. With regard to the malicious prosecution claim again, because the defendants had probable cause to issue the citations and because the evidence in the record from the district attorney who filed the criminal complaints was that those charges were filed based on the plaintiff's admissions and not on anything else that happened in this case. Again, the district court correctly granted defendants motion for summary judgment with regard to the effect of 498016, which is the mercy killing statute in Oregon. It is defendant's view, as it was the district court's view, that regardless of whether that's a statute that might in some circumstances apply to hunters out in the field. In this case, first of all, Mr. Bottini, who tagged the elk he didn't kill, committed a violation regardless of the application of that statute. And that Mr. Pichetti didn't comply with the terms of the statute because he, in the field, instead of contacting Fish and Wildlife to report the killing and waiting then leaving the elk where it had been killed in order for the troopers to respond, allowed Mr. Bottini to tag the elk, transported it along with the other men and women who had been killed. And that, consequently, they didn't comply with that statute, even assuming... Okay, how didn't they comply with the statute? Because the language of the statute requires that a person killing wildlife under that statute shall immediately report the killing to a person authorized to enforce the wildlife laws. Okay, and so what's the time, I mean, what does that mean when you're in the woods immediately? I mean, they reported it, correct? No, they didn't report it. What happened was that there was an off-duty police officer hunting in the same area who had contacted state police because he was concerned about what this hunting party was doing. The state police responded... They came. Came to the staging area where the elk had been moved and contacted the hunters at that time. So there was no report made by these plaintiffs. I guess the difficulty I'm having with that is, what, is it a question of timing, that they didn't, they weren't out of their staging area to make the report? I mean, were they required to call by cell phone? What does this mean in a practical sense when you're out in the woods? Well, I... Is it because an hour had elapsed, or is it because they were still in the woods, or is it because they didn't take out their cell phone? What was the violation? I mean, anybody who's been out hunting, you say, I mean, like, I'm supposed to go out and talk to the game and fish people. They're not right there. You have to leave, go out, get your truck. So I'm not quite sure how they, you know, if they hadn't even had a chance to report, then why they would be in violation of failure to report. I have a couple of response to that. The first one with regard to whether they had had a chance to report, I think what is in the record on summary judgment is that this hunting party had handheld radios that they were using to communicate with each other. They certainly, this isn't a case where they had no ability to communicate with the outside world in the location where they were. Is there any evidence that they had the ability to communicate with the game and fish people on those radios? No. Not that I recall. I assume these are short-range radios that probably... These are probably party-to-party radios. The record isn't totally clear about that, but presumably so. We've got to throw out the radio next. What's the other... The other concern is a bigger one, which is that in defendants' and the state of Oregon's view, this mercy-killing statute generally isn't intended to apply to a party of hunters who are out there, each of them, with a single tag for, in this case, elk, because what that would allow would be five hunters, five tags, all five people, could shoot and injure elk, and one member of the party, who perhaps is a more skilled hunter than the others, could kill all five of them. I mean, that's possible. But my problem with that argument is that's saying, you know, that if you have people who are flagrantly avoiding law, then this obviously shouldn't give them an out. But you have a case where the statute doesn't say that, and you have a single elk here, not a question of the parties aggregated their elk. Five or ten elk kind of went home because you had ten people. You have basically a situation where you have one elk. So if I read the statute, I'm having trouble reading in your exception to the statute. It doesn't say that. So then you raise the question of, well, maybe there is a factual issue there of whether it was done for a humane purpose or whether it was done to basically, you know, skirt the hunting laws. Well, it's possible that there is, you know, a factual issue about these plaintiffs' intent, true. There also, I think, you know, is fairly a statutory construction question because of the fact that there are no Oregon cases construing the statute or talking about it in the context of the fish and game regulations. But it seems to me that the state of the record is inconclusive on the question that we're wrestling with here, that the off-duty trooper summoned on-duty officers who arrived in the area at the trailer, but there's no evidence that any of the hunters had taken any steps to notify anybody. What they were doing was loading and perhaps quartering the carcasses to load them into the trailer so that they could take them out of the woods. But that doesn't answer our question as to whether or not, as a matter of law, that's a violation of the shall immediately report such killing language of the statute. Is there anything more in the record that tells us what happened other than the troopers show up and say to the hunters, what do you got there in the trailer? What the record tells us is that this elk was shot, you know, several hours earlier in the day. It took some time for the troopers to respond. By the time they responded, that elk had been tagged with Mr. Bettini's tag. There is no evidence in the record suggesting that up to that point, the plaintiffs had made any attempt to contact Fish and Wildlife about what had happened. And that issue... We're right back to the factual issues. What does that mean in the context you have to immediately call? I mean, I think if it's a day later, we probably wouldn't have this discussion. I think if they'd been out at the restaurant or the bar after the hunt and they're not basically out there, you know, wherever they were in Baker County, then we would have a different issue. But here, they're basically still in the forest, right, or in the woods. They were... I think what the record tells us is that they were at a trailer that they had parked somewhere, it's not clear where, and were in the process of cutting the elk up and putting them on this trailer to take them away. And elk at that point, right? No, I think... Big elk, Mr. DeRusso? I think all the elk were there by the time the troopers arrived. They were all there, but they weren't cutting up all the elk. That's correct. And elk. They had... And actually, I think even cutting it up maybe isn't entirely accurate. I think what the record said was that one of the elk was very large, and in order to haul it out of wherever they had killed it, they had cut it in half. And then the other two, I believe they had field-dressed and then hauled back to the trailer, but the record doesn't tell us that they were cutting them up any more than that. But they certainly were in the process of packing up all these elk and taking them away from wherever that trailer was located, and that they had made no attempt to contact Fish and Wildlife or contact the state police until the state police arrived and confronted them. And I think, you know, more to the point, if the argument is that the malicious prosecution claim was based on the application of this statute, it's defendants' view that it really is irrelevant to a claim for malicious prosecution because, in this case, there was probable cause to cite both of these individuals based on what they admitted to the troopers had happened. And that the affidavit from the Baker County District Attorney that's in the record was clear that, in his view, this mercy killing exception did not apply, that he had pursued the criminal charges based on what these hunters had said happened, and that none of the rest of all this had any bearing on his decision to prosecute the case. And so I think that disposes of the malicious prosecution claim, regardless of whether or not 498016 might apply as an exception or a defense to those violations. So if I can summarize what you just said, your argument, I think, is that even if this may have been a bona fide defense had the criminal prosecution gone forward, it's legally irrelevant to civil liability for the initial arrest and the malicious prosecution claim. That's correct, particularly given the uncertainty of the law in Oregon regarding the application and the meaning of this statute. And unless the Court has further questions for me, I won't. Well, that would be a qualified immunity defense, in effect, correct? It would, and this case has not gotten there yet. Has not gotten there. All right. I have nothing further to add with my 25 seconds, unless there are more questions by the panel. I think we understand that. I think we understand the sequence. Thank you both. Thank you. It's a very interesting case. We appreciate your arguments. Appreciate you coming from Oregon. The case of Pisetti v. Spencer is now submitted.
judges: Guy, McKeown, Tallman